# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL |
| | : | |
| v. | : | NO. 12-484 |
| | : | |
| CURTIS CRAWFORD | : | |

## MEMORANDUM OPINION

**Savage, J.** July 9, 2013

The defendant, Curtis Crawford, moved to suppress a gun the police retrieved from a sewer culvert where he had tossed it while running from the police. He contended that the police lacked reasonable suspicion to conduct an investigatory stop. He also moved to suppress a statement he gave the police as the fruit of an illegal arrest.

After an evidentiary hearing, we denied his motion to suppress the gun and granted his motion to suppress his statement.[1] We now explain our rationale for denying his motion to suppress the gun and to supplement our findings of fact.

## Background

The events leading up to Crawford's arrest started when police officers in plain clothes approached several men who were sitting in a playground at 9th and Percy Streets in Philadelphia shortly after midnight on August 22, 2012. Two Philadelphia police officers, Kevin Gorman and Thomas Bellon, alighted from an unmarked police vehicle driven by fellow officer James Boone. While Boone parked the vehicle at the

---

[1] Crawford claimed his statement was made in response to police questioning. Def.'s Mem. in Support of Mot. to Suppress Physical Evidence and Statements at 7 (Doc. No. 17). The government, in its response to his motion, contended that the statement, which was overheard by a civilian, was a spontaneous utterance and not provoked by the police. Government's Resp. to Def.'s Mot. to Suppress at 8 (Doc. No. 18). The government presented no evidence regarding the circumstances surrounding the making of the statement. Accordingly, we granted the motion to the extent it sought suppression of Crawford's statement.

corner, Gorman and Bellon entered the playground to talk to the men there regarding recent robberies in the area. As they approached, Gorman noticed another man, later identified as Crawford, and a woman sitting at a bench off to his right rear.

As Gorman turned in his direction, Crawford got up, began walking backwards and suddenly ran from the playground. Gorman and Bellon took up chase, yelling "police" and "halt."

As Crawford ran through the gate of the playground, Boone, who was sitting in the car at that intersection, saw him with a gun in his right hand as he ran. Boone yelled out and transmitted over police radio that the fleeing man had a gun.

During the chase, Gorman and Bellon saw Crawford make a throwing motion toward a sewer inlet on the street. Simultaneously, Gorman heard a clinking sound like metal scratching on concrete. As Bellon continued to run after Crawford, Gorman remained at the sewer inlet. Boone, who was pursuing Crawford in the vehicle, eventually got out and chased him on foot through a back alleyway. Boone eventually caught Crawford who was sitting on a porch step and removing his hoody. Boone placed Crawford under arrest and handcuffed him. He returned Crawford to the location where Gorman was waiting.

The police summoned a Department of Streets crew to assist in searching for the gun. After arriving at the location, the crew scooped out the contents of the sewer. A gun was recovered from the debris.

**Analysis**

The police had reasonable suspicion to stop and investigate, if not probable cause to arrest, Crawford based upon his running from the scene with a gun in his

2

hand. Crawford began running before Gorman or any other police officer gave any commands. He was not placed under arrest, not directed to halt, and not otherwise restricted. Gorman did not say anything to Crawford until after he began running at which time Gorman identified himself as "police" and ordered him to stop. Crawford did not comply. He did not submit to police authority.

If Crawford's unprovoked running from the scene did not give the police any justification for pursuing and ultimately arresting him, they certainly had probable cause, no less reasonable suspicion, to stop him once Boone saw Crawford's gun and announced it to his fellow officers.

Ironically, had Crawford not run and merely concealed the gun, the police would not have had any reason to stop and frisk him. *See Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) (holding that flight alone in a high crime area alone does not create a reasonable suspicion justifying a *Terry* stop). He could have declined to answer any questions and walked away. *Id.* (*citing Florida v. Royer*, 460 U.S. 491 (1983)). At that point, assuming the gun remained concealed, the police would not have had any suspicion that he was involved in any wrongdoing. It was when he ran that he exposed the gun, giving the police justification for chasing him. In other words, it was Crawford's own action that disclosed the gun, not the officers'. *See Hester v. United States*, 265 U.S. 57, 58 (1924).

The facts in this case are almost identical to those in *California v. Hodari D.*, 499 U.S. 621 (1991). Hodari was among a group of teenagers in a high crime area who ran when a police vehicle appeared. *Id.* at 622-23. During flight, Hodari discarded a quantity of crack cocaine which the police recovered. *Id.* at 623. The Supreme Court

held that "[a]n arrest requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority." *Id.* at 626 (emphasis in original). Thus, it concluded that because Hodari had fled prior to any physical contact or submitting to authority, no seizure had occurred until he was arrested and after he had thrown the cocaine.

In this case, Crawford did not submit to police authority before he tossed the gun into the sewer. The police did not physically stop him. Gorman commanded him to stop. He did not. Boone did not arrest him until after Crawford had abandoned the gun. Thus, at the time Crawford threw the gun, there had been no seizure for Fourth Amendment purposes.

Just as in *Hodari D.*, if the police pursuit constituted a "show of authority," Crawford was not seized until he was arrested on the porch steps because he had not complied with the police command to stop. The gun abandoned while he was running was not the fruit of a seizure. Therefore, his motion to exclude evidence of the gun was denied.